IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ALVIN L. EWING, II,

    Defendant.

Case No. 14-CR-40084-SMY

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Suppression of Evidence (Doc. 28). On August 21, 2014, Illinois State Police Trooper Daniel Harris was patrolling on Illinois Route 1 approximately 1 ½ - 2 miles from the city limits of Grayville, Illinois. At 7:08 p.m., Trooper Harris observed an orange Harley Davidson motorcycle traveling south on Route 1 at 70 m.p.h., exceeding the posted 55 m.p.h. speed limit. (Doc. 35, Ex. 1, 10). Trooper Harris initiated a traffic stop on the motorcycle at 7:08:47. (Doc. 35, Ex. 2). Upon approaching the motorcycle, Trooper Harris observed that the operator, later determined to be defendant Alvin L. Ewing appeared nervous as his hands were shaking. (Doc. 35, Ex. 1, 10). He also observed a white toy helicopter box strapped to the back of the motorcycle seat. (Doc. 35, Ex. 1, 10). Trooper Harris advised Defendant of the reason for the stop, questioned Defendant regarding speed, and requested that Defendant produce his driver's license. (Doc. 35, Ex. 1, 10). Upon running a computer check of Defendant's license and criminal record, Trooper Harris learned that Defendant was a convicted felon whose offenses included multiple convictions for both controlled substance and firearms offenses. (Doc. 35, Ex. 1, 10).

Based on Defendant's nervousness and extensive criminal record, Trooper Harris decided to request that Grayville Police Department's K-9 unit respond while he completed the traffic

citation. (Doc. 35, Ex. 1, 10). Defendant was directed by Trooper Harris to sit in the front seat of his squad car while his traffic citation was completed. (Doc. 35, Ex. 1, 10). K-9 Officer Sgt. Burley was located approximately 2 miles from the site of traffic stop at the time he received Trooper Harris' cellular telephone call and responded to the scene.

 Sgt. Burley arrived on scene at 7:15 p.m., approximately six minutes after the initiation of the traffic stop. (Doc. 35, Ex. 4, 2) Upon Sgt. Burley's arrival, Trooper Harris was in the process of completing Defendant's traffic citation. (Doc. 35, Ex. 1, 10). Sgt. Burley immediately deployed his canine for a free-air sniff around the motorcycle, and the canine alerted on both the motorcycle seat and the toy helicopter box strapped thereto. (Doc. 35, Ex. 4, 2); (Doc. 35, Ex. 1, 10). The free-air sniff resulted in a positive alert, and Sgt. Burley began searching the motorcycle while Trooper Harris was finishing filling out the traffic citation. (Doc. 35, Ex. 1, 10) Sgt. Burley's search of the motorcycle revealed an AR-15 style assault rifle and a loaded magazine containing 14 rounds of ammunition in a toy helicopter box. (Doc. 35, Ex. 1, 10); (Doc. 35, Ex. 4, 2). Because he was a convicted felon, Defendant was placed under arrest for the Illinois state law offense of Unlawful Use of a Weapon by a Felon. (Doc. 35, Ex. 1, 10). As he was being removed from the front seat of Trooper Harris' squad car to be placed under arrest, Trooper Harris observed two baggies of methamphetamine between the front passenger seat and passenger door frame rail where Defendant had been seated. (Doc. 35, Ex. 1, 10); (Doc. 35, Ex. 4, 2).

 A subsequent search of Defendant's person incident to arrest revealed two additional baggies of methamphetamine in Defendant's right front pants pocket along with a measuring scale and a used hypodermic syringe commonly used for ingesting methamphetamine. (Doc. 35, Ex. 1, 10). Trooper Harris orally advised Defendant of his Miranda rights at the scene upon his

arrest. (Doc. 35, Ex. 1, 10). Defendant subsequently made several incriminating statements. (Doc. 35, Ex. 1, 10).

On October 7, 2014, a Federal Grand Jury returned an indictment charging Defendant with Felon in Possession of a Firearm. On January 6, 2015, the Grand Jury returned a Superseding Indictment which added a second count charging Defendant with Unlawful User of a Controlled Substance in Possession of a Firearm.

Defendant has moved to suppress evidence based on alleged Fourth Amendment violations. Specifically, he argues that the arresting officer did not have probable cause to extend the initial traffic stop by calling for a K-9 unit, did not have probable cause to search the motorcycle, and did not have probable cause to arrest Defendant.

A roadside traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). When a suspect is detained for a traffic stop, the detention must be "temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

Subjecting a vehicle to "a canine sniff during a lawful traffic stop does not violate the Fourth Amendment, even if the officer conducting the search has no reasonable suspicion of drug activity." *Buchanan v. Kelly*, 2014 WL 5802295 (7th Cir. 2014) "It is well-established that a canine sniff of the exterior of a vehicle for narcotics does not implicate Fourth Amendment concerns, providing that the individual is lawfully detained at the time of the sniff." *United States v. Johnson*, 2008 WL 187559, at *12 (C.D.Ill. Jan. 18, 2008). A five to ten minute detention for a traffic violation may be reasonable, while a fifteen-minute detention might not.

See e.g., *United States v. Garrett*, 139 Fed.Appx. 720, 723 (7th Cir.2005) (stating if the dog alerted within 5 to 10 minutes of the defendant being pulled over, that would likely be a reasonable amount of time for the officer to still be responding to the traffic violation, but a 15 minute stop to issue a ticket or citation may be unreasonable).

In the case at bar, the free-air sniff and alert took place within about 10 minutes of the initial stop. Furthermore, the trooper was still completing his duties in issuing the traffic citation while the free-air sniff was occurring. Sgt. Burley was also able to search the motorcycle before the trooper was finished with his duties associated with the traffic stop. Therefore, there was no unreasonable extension of the stop, and no probable cause was needed to call the dog or to conduct the free air sniff of the motorcycle.

Regarding Defendant's argument that there was no probable cause for a warrantless search of the motorcycle, a dog alert itself provides probable cause for the officer to conduct a warrantless search of the vehicle pursuant to the automobile exception. *United States v. Washburn*, 383 F.3d 638, 643 (7th Cir.2004). Therefore, there was sufficient probable cause for the search of the motorcycle subsequent to the free-air sniff and alert.

Finally, there was sufficient probable cause to place the Defendant under arrest. During a valid traffic stop, an officer may "legitimately ask [a motorist] to step out of his car, even without any particularized suspicion" and may ask the motorist "to sit in his patrol car" without rendering the motorist under arrest. *United States v. Baker*, 78 F.3d 1241, 1244 (7th Cir. 1996). Prior to the search of the motorcycle, Defendant was simply lawfully detained and not under arrest. After the free-air sniff and alert, the search of the motorcycle, and the locating of a weapon, a controlled substance, and drug paraphernalia, there was clearly sufficient probable cause to place Defendant under arrest for multiple offenses.

It is apparent that Defendant did not suffer Fourth Amendment violations relating to the stop and search of his vehicle and his subsequent arrest.  Accordingly, the Court **DENIES** Defendant's Motion for Suppression of Evidence in its entirety.

**IT IS SO ORDERED.**

**DATED:  February 3, 2015**

/s/    Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**