IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ALVIN L. EWING, II,

    Defendant.

Case No. 14-CR-40084-SMY

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion for Reconsideration (Doc. 61), After review of all motions, responses, and exhibits filed regarding Defendant's Motion to Suppress and subsequent motions, the Court hereby DENIES Defendant's Motion to Reconsider (Doc. 61).

Although the Federal Criminal Code and Rules do not authorize or even mention motions to reconsider, the United States Supreme Court has held that motions to reconsider may be filed in criminal cases in district courts. See *United States v. Healy*, 376 U.S. 75, 77 (1964); *United States v. Kalinowski*, 890 F.2d 878, 881 (7th Cir. 1989). Therefore, motions to reconsider may be filed in criminal cases where they are based on an intervening change in controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice. *United States v. Linder*, 2013 WL 505214 (N.D.Ill. February 12, 2013).

Here, Defendant has cited to a recent Supreme Court Case decided on April 21, 2015, *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). In *Rodriguez*, the suspect was stopped for a traffic infraction. *Id*. at 1612-13. The officer completed the traffic stop up to and including issuing a warning ticket for the traffic offense before asking Rodriguez for permission to conduct a free air search with his K-9. *Id*. Rodriguez refused, and he was detained until a second officer

arrived. *Id*. After the second officer arrived, the officer conducting the stop retrieved his dog, who then alerted to the presents of drugs in the vehicle. *Id*. Methamphetamine was found as a result of the free air sniff. *Id*. From the time the written warning was issued to the time of the dog alert, about seven or eight minutes elapsed. *Id*.

In determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation" into the reason for the stop. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). The Court held that "the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). However, "a traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket." *Id*. at 1614-15 (internal quotation marks omitted). "An officer may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. at 1615. "The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff prolongs—i.e., adds time to—the stop." *Id*. at 1616 (internal quotation marks omitted).

In this case, Trooper Harris initiated a traffic stop on Defendant's motorcycle at 7:08:47 on August 21, 2014,. (Doc. 35, Ex. 2). Upon approaching the motorcycle, Trooper Harris observed that the operator, later determined to be defendant Alvin L. Ewing appeared nervous as his hands were shaking. (Doc. 35, Ex. 1, 10). Trooper Harris advised Defendant of the reason for the stop, questioned Defendant regarding speed, and requested that Defendant produce his driver's license. (Doc. 35, Ex. 1, 10). Upon running a computer check of Defendant's license and criminal record, Trooper Harris learned that Defendant was a convicted felon whose offenses

included multiple convictions for both controlled substance and firearms offenses. (Doc. 35, Ex. 1, 10).

Based on Defendant's nervousness and extensive criminal record, Trooper Harris decided to request that Grayville Police Department's K-9 unit respond while he completed the traffic citation. (Doc. 35, Ex. 1, 10). Defendant was directed by Trooper Harris to sit in the front seat of his squad car while his traffic citation was completed. (Doc. 35, Ex. 1, 10). K-9 Officer Sgt. Burley was located approximately 2 miles from the site of traffic stop at the time he received Trooper Harris' cellular telephone call and responded to the scene.

Upon Sgt. Burley's arrival, Trooper Harris was in the process of completing Defendant's traffic citation. (Doc. 35, Ex. 1, 10). Sgt. Burley immediately deployed his canine for a free-air sniff around the motorcycle, and the canine alerted on both the motorcycle seat and the toy helicopter box strapped thereto. (Doc. 35, Ex. 4, 2); (Doc. 35, Ex. 1, 10). The free-air sniff resulted in a positive alert, and Sgt. Burley began searching the motorcycle while Trooper Harris was finishing filling out the traffic citation. (Doc. 35, Ex. 1, 10)  Sgt. Burley's search of the motorcycle revealed an AR-15 style assault rifle and a loaded magazine containing 14 rounds of ammunition in a toy helicopter box. (Doc. 35, Ex. 1, 10); (Doc. 35, Ex. 4, 2).  Two baggies of methamphetamine were found between the front passenger seat and passenger door frame rail where Defendant had been seated. (Doc. 35, Ex. 1, 10); (Doc. 35, Ex. 4, 2).

The facts do not indicate that there was any extension of the traffic stop due to the free air sniff either before or after the traffic citations was written and issued.  Sgt. Burley's K-9 had already alerted by the time Trooper Harris had completed the traffic citation.  There is also no argument or evidence that Trooper Harris's phone call requesting Sgt. Burley come to the scene in any way extended the duration of the traffic stop.  The evidence before the Court indicates that

Trooper Harris acted with diligence in pursuing the investigation into Defendant's traffic offense. Accordingly, the holding in *Rodriguez* has no bearing on the constitutionality of the free air sniff of Defendant's motorcycle. The evidence found on the motorcycle as a result of the free air sniff will not be suppressed.

Regarding the methamphetamine located in the front seat of Trooper Harris's patrol vehicle after Mr. Ewing was arrested and removed to the back seat, this evidence will also not be suppressed. The government's interest in officer safety outweighs the additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 110-111 (1977). Defendant has neither argued nor provided evidence that Defendant's presence in the front seat of the patrol vehicle constituted a constitutional violation, and the discovery of the methamphetamine was not tied to the result of the free air sniff of Defendant's vehicle.

Accordingly, the Court hereby **DENIES** Defendant's Motion to Reconsider (Doc. 61).

**IT IS SO ORDERED.**

DATED: May 19, 2015

/s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**